UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE


**United States of America**

    **v.**                                            Case No. 04-cr-126-04-PB
                                                                           Opinion No. 2007 DNH 097
**Jerry A. Shanahan**


**MEMORANDUM AND ORDER**

Jerry Shanahan moves to dismiss the criminal charges against him with prejudice on the grounds that the delay in bringing him to trial following a mistrial violates the Speedy Trial Act, 18 U.S.C. § 3161 et. seq.  For the reasons set forth below, I grant Shanahan's motion to dismiss without prejudice to the government's right to seek a new indictment.


I.   **BACKGROUND**

On March 23, 2005, a grand jury returned a superseding indictment charging Shanahan with six counts of conspiracy, securities fraud, making false statements to auditors, and wire fraud (Counts 1, 2, 3, 4, 5 and 16).  Between the return of the

superseding indictment on March 23, 2005, and the commencement of trial on November 8, 2006, Shanahan and his alleged co-conspirators requested and received numerous continuances of the trial date.

On December 19, 2006, the jury returned a verdict of acquittal on Count 4 against Shanahan, but was unable to reach a unanimous verdict on the remaining counts against him. On Shanahan's motion for a mistrial, I concluded that further deliberation would be futile and declared a mistrial on the deadlocked counts.

After dismissing the jury, I asked the government whether it intended to retry Shanahan and requested that it report its decision to the court as expeditiously as possible. Trial Transcript, Dec. 19, 2006 at 49-50. "If you are planning to retry him," I said, "I want to have a conference with you immediately or as soon as that decision has been made to decide when we would do it." Id. The government stated that it had not yet decided, but that it "expect[ed] to reach that decision very, very soon." Id. The same day, in an off-the-record conference with counsel for Shanahan and the government in my chambers, the government informed me that lead counsel, Colleen Conry, Senior

Litigation Counsel in the Fraud Section of the United States Department of Justice, had a large, complex insider trading trial scheduled to commence in March 2007 in Denver and would likely be unavailable to retry Shanahan in the spring of 2007. On January 2, 2007, Conry began preparing on a full-time basis as the sole prosecutor for that case, which she ultimately tried from March 19, 2007 to April 19, 2007. In addition, on or about December 26, 2006, her co-counsel, Assistant United States Attorney William Morse, began preparing on a full-time basis as sole lead counsel for a seventeen-count tax fraud and structuring trial that began on January 9, 2007. Morse Declaration at ¶ 2. Morse has been substantially occupied by that case even following the conclusion of trial, owing to the convicted defendants' barricaded retreat into their home and repeated threats to kill anyone who tries to arrest them. Morse Declaration at ¶ 3.

On December 27, 2006, Shanahan's counsel, Andrew Good, met with Morse (in person) and Conry (via telephone) to discuss the likelihood of retrial. The prosecutors informed Good that the government was continuing to evaluate the issue, but that it had

not yet decided whether to retry him.[1]

On February 7, 2007, the court's case manager called Morse to inquire about the government's intentions with respect to Shanahan.  On February 8, 2007, Morse called Good to notify him of the court's inquiry, and informed him that the U.S. Attorney's office had made its decision but that the DOJ Fraud Section had not yet done so.  On that date, and again on February 12, 2007, Good told Conry that he wished to be heard by the decisionmakers at the DOJ before a final decision was made.  Conry told Good that she would forward his request up the chain of command.  Good Declaration at ¶ 4.

On February 15, 2007, having heard nothing more from the parties but mindful of both counsels' busy trial schedules, the complexity of the issues in Shanahan's case, and the need for continuity of counsel, I issued an order scheduling retrial for the two-week period beginning September 5, 2007.

---

[1] Conry maintains that she informed Good both at this time and subsequently that, unless and until the government specifically indicated otherwise, he should assume, pursuant to the government's default position, that Shanahan would be retried.  Good maintains that Conry did not inform him of this "default" position until May 15, 2007.

-4-

On May 15, 2007, Good again inquired of the government's intentions, and again learned that the DOJ had not yet made a decision, but that Conry was in Concord, New Hampshire reviewing case records for the express purpose of deciding whether to retry Shanahan.  Good informed the prosecutors that he believed a retrial was time-barred by the Speedy Trial Act and forwarded to them a draft motion and memorandum seeking dismissal of the indictment on these grounds.  On May 30, 2007, Morse and Conry informed Good that the government had decided to retry Shanahan.  Good filed the instant motion that same day.

On May 31, 2007, in response to the filing of Shanahan's Speedy Trial motion, I moved the trial date up to July 10, 2007, the next available trial period.  On June 12, 2007, Shanahan filed a motion to continue the trial until September 5, 2007.  On June 22, 2007, I held a hearing on both motions and subsequently granted his motion to continue the trial until September 5, 2007.

## II.  **SPEEDY TRIAL ACT STANDARDS**

Pursuant to The Speedy Trial Act, if a "defendant is to be tried again following a declaration by the trial judge of a mistrial . . . the trial shall commence within seventy days from

the date the action occasioning the retrial becomes final." 18 U.S.C. § 3161(e); United States v. Mack, 669 F.2d 28, 30 (1st Cir. 1982). If a defendant is not brought to trial within this time limit, enlarged by certain excludable intervals, see 18 U.S.C. § 3161(h), the indictment must be dismissed on the defendant's motion. United States v. Barnes, 159 F.3d 4, 9 (1st Cir. 1998); United States v. Hastings, 847 F.2d 920, 925 (1st Cir. 1988) (both cases citing 18 U.S.C. § 3162(a)).

The following periods of delay are properly omitted when calculating the time within which a retrial must commence:

> (1)[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to-
>
> ....
>
> (F) delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion;
>
> ....
>
> (8)(A) Any period of delay resulting from a continuance granted by any judge on his own motion or at the request of the defendant or his counsel or at the request of the attorney for the Government, if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial. No such period of delay

>   resulting from a continuance granted by the court in
>   accordance with this paragraph shall be excludable
>   under this subsection unless the court sets forth, in
>   the record of the case, either orally or in writing,
>   its reasons for finding that the ends of justice served
>   by the granting of such continuance outweigh the best
>   interests of the public and the defendant in a speedy
>   trial.

18 U.S.C. § 3161(h); see also Barnes, 159 F.3d at 9.  In conducting the ends-of-justice balancing test set forth in 18 U.S.C. § 3161(h)(8)(A), a judge must consider certain factors, including the complexity of the case, the need for continuity of counsel, and the time needed for counsel to effectively prepare for trial.  18 U.S.C. § 3161(h)(8)(B).

### III. DISCUSSION

Shanahan seeks a dismissal with prejudice on Counts 1, 2, 3, 5, and 16 of the superseding indictment[2] on the grounds that his right to a speedy trial on those counts has been abridged.  The basis for his argument is as follows: on December 19, 2006, a

---

[2] In his memorandum in support of his motion Shanahan states that "the jury acquitted him on count 5, and failed to reach verdicts on counts 1, 2, 3, 4 & 16." Def.'s Memorandum at 3 (emphasis added).  In reviewing the records of this case it is clear that the jury acquitted him on Count 4, but failed to reach a verdict on Count 5.

jury acquitted him on Count 4, but was unable to reach verdicts on Counts 1, 2, 3, 5, and 16 of the superseding indictment. As a result, I declared a mistrial on those counts. Shanahan alleges that because he was not tried within seventy days of the declared mistrial, these counts must be dismissed. The government contends that when certain periods of delay are excluded pursuant to 18 U.S.C. § 3161(h), the date set for the retrial satisfies the requirements of the Act.

### A. Did A Speedy Trial Act Violation Occur?

In analyzing the issue, I assume that the speedy trial clock started to run on December 19, 2006, the day that I declared the mistrial.[3] Next, I must determine whether any periods of delay

---

[3] A minority of courts have determined that the "action occasioning the retrial," 18 U.S.C. § 3161(e), is not the declaration of the mistrial, but rather the subsequent court order setting the case for retrial. See United States v. Crooks, 804 F.2d 1441 (9th Cir. 1986), modified in other respects, 826 F.2d 4 (1987); United States v. Gaffney, 689 F.Supp. 1578, 1579 (D. Md. 1988). Although the First Circuit has not yet resolved this issue, I agree with the majority of courts that have concluded that the declaration of the mistrial is the action occasioning the retrial. See, e.g., United States v. Pitner, 307 F.3d 1178, 1182 n.3 (9th Cir. 2002); United States v. Van Someren, 118 F.3d 1214, 1217 (8th Cir. 1997).

between December 19, 2006 and May 30, 2007[4] may be excluded in computing the time within which Shanahan's retrial must occur.

### 1.  **December 19, 2006 to February 15, 2007**

Although the government does not raise this issue, several courts have recognized that time used by the parties for "consideration, preparation, and response to *specific requests* by the court is excludable" pursuant to the "other proceedings" provision of 18 U.S.C. § 3161(h)(1).  Van Someren, 118 F.3d at 1217 (emphasis in original) (excluding time during which court awaited response from government whether it intended to retry defendant following mistrial) (citing United States v. Hoslett, 998 F.2d 648, 657 (9th Cir. 1993); United States v. Montoya, 827 F.2d 143, 153 (7th Cir. 1987)).  In all of these cases, the court could not properly dispose of an issue without receiving additional information from the parties.  Id.  Although I ultimately acted on my own initiative in setting the case for

---

[4] Neither party disputes that Shanahan's May 30, 2007 filing of the instant motion stopped the speedy trial clock.  See 18 U.S.C. § 3161(h)(1)(F) (exclude "delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion").

retrial because nearly two months had passed without a response from the government, I nonetheless conclude that the same principle applies here. Therefore, the period of delay between the declaration of the mistrial and the setting of the new trial date should be excluded pursuant to 18 U.S.C. § 3161(h)(1). See Van Someren, 118 F.3d at 1217.

### 2. **February 15, 2007 to May 30, 2007**

The government contends that the period between February 15, 2007 and May 30, 2007 should be excluded as an ends-of-justice continuance pursuant to 18 U.S.C. § 3161(h)(8)(A). It bases this argument on the fact that on February 15, when I set the case for retrial, I had in mind several factors which could support a continuance because the ends of justice served by doing so outweigh the best interest of the public and the defendant in a speedy trial.[5] Although I did not memorialize these findings on the record or order a continuance in accordance with my unvarying practice, the government nevertheless contends that under Zedner

---

[5] These factors included the complexity of issues in the case, both counsels' busy trial schedules, the need for continuity of counsel for both parties, and the time needed for the attorneys to prepare for retrial. See 18 U.S.C. § 3161(h)(8)(B).

v. United States, 126 S.Ct. 1976, 1989 (2006), I may now record these findings to support an ends-of-justice continuance retroactive to February 15, 2007 and exclude the associated delay.

In Zedner, the U.S. Supreme Court held that a district court could not exclude time pursuant to an ends-of-justice continuance because it had failed to record its supporting findings prior to ruling on the defendant's motion to dismiss pursuant to the Speedy Trial Act.  126 S.Ct. 1989.  The Supreme Court expressly rejected the government's contention that on remand the district court could record, and retroactively apply, its findings to a continuance issued years earlier.  Id. at 1988-89.  The Supreme Court recognized in dicta, however, that the court could wait to memorialize findings it had actually made when granting the continuance until it ruled on the defendant's motion to dismiss. Id. at 1989.  The Court nevertheless noted that "[t]he best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance."  Id. at n. 7.

Even if I accept the government's contention that my order setting the case for retrial was effectively a continuance, I am

-11-

unpersuaded by its argument that I can justify the continuance by placing my reasons for granting the continuance on the record now.  I recognize that Zedner and several circuit courts permit a judge to memorialize his findings after-the-fact, but these cases consistently require that the judge actually engage in the required balancing analysis and make his findings contemporaneously with his analysis, if only in his mind.  See, e.g., Zedner, 126 S.Ct. at 1989; United States v. Apperson, 441 F.3d 1162, 1180 (10th Cir. 2006).  Although the reasons I had in mind when I set the date for the retrial would have permitted me to grant an ends-of-justice continuance at the time, and, if asked, I would have done so, I cannot rely on the Zedner exception here because I did not engage in the formal balancing test required by the Act.  See Apperson, 441 F.3d at 1180 ("The balancing must occur contemporaneously with the granting of the continuance because Congress intended that the decision to grant an ends-of-justice continuance be prospective, not retroactive") (internal quotations omitted).  To apply the Zedner exception here would eviscerate the formal requirements of the Speedy Trial Act and render it indistinguishable from the granting of an

impermissible retroactive continuance.[6]

Under these facts and for the reasons stated, I decline to rewrite history by now classifying my February 15 scheduling order as an ends-of-justice continuance. With this period running against the speedy trial clock, I conclude that more than seventy non-excluded days have accrued since the date occasioning a mistrial, and accordingly the superseding indictment must be dismissed.

## B. Dismissal With or Without Prejudice

The parties dispute whether the indictment should be dismissed with or without prejudice. In making this determination, courts in the First Circuit consider four factors:

---

[6] Not surprisingly, the government does not contend that I may grant a retroactive continuance. See, e.g., United States v. Suarez-Perez, 484 F.3d 537, 542 (8th Cir. 2007) ("The Speedy Trial Act does not provide for retroactive continuances"); United States v. Brenna, 878 F.2d 117, 122 (3d Cir. 1989) (per curiam) (holding that an ends-of-justice continuance "cannot be entered *nunc pro tunc* . . . the district court must, at a minimum, state that it is entering an 'ends of justice' continuance or a continuance pursuant to section 3161(h)(8)(A).") (emphasis in original); United States v. Janik, 723 F.2d 537, 545 (7th Cir. 1983) ("Since the Act does not provide for retroactive continuances, a judge could not grant an 'ends of justice' continuance *nunc pro tunc* . . ." (internal quotation and citation omitted)).

(1) the seriousness of the offense, (2) the facts and circumstances of the case which led to the dismissal, (3) the impact of reprosecution on the administration of justice and enforcement of the Speedy Trial Act, and (4) any related miscellaneous factors, including the length of delay and whether the delay resulted in actual prejudice to the defendant.  18 U.S.C. § 3162(a)(1) and (2); United States v. Scott, 270 F.3d 30, 58 (1st Cir. 2001); Barnes, 159 F.3d at 16; Hastings, 847 F.2d at 925.  I address each factor in turn.

   1.   Seriousness of the offense

"This aspect of the test centers primarily on society's interest in bringing the particular accused to trial.  The graver the crimes, the greater the insult to societal interests if the charges are dropped, once and for all, without a meaningful determination of guilt or innocence."  Hastings, 847 F.2d at 925.  Dismissal of charges associated with drugs or violence, for example, weighs heavily toward dismissal without prejudice because such crimes pose serious threats to society.  See United States v. May, 819 F.2d 531, 534 n.15 (5th Cir. 1987) (collecting representative cases).  In the First Circuit, however, a crime need not be violent or drug related to be deemed serious.  See,

e.g., Scott, 270 F.3d at 58 (bank fraud is a serious offense which carries with it a maximum sentence of 30 years' imprisonment under 18 U.S.C. § 1344). There is little doubt in my mind that the charged offenses in this case are serious crimes which carry substantial prison sentences and bear on the reliability and integrity of the securities markets.

2. Facts and circumstances leading to dismissal

> [W]here the delay-causing conduct is attributable to the sovereign (the court or the prosecutor), it inveighs progressively in favor of the accused. . . . [T]he appropriateness of barring reprosecution increases in relatively direct proportion to the degree of culpability which attaches. Accordingly, delay which results either from intentional noncompliance with the Act or from actions designed to gain unfair prosecutorial advantage weighs heavily in favor of dismissal with prejudice. . . . [On the contrary,] random negligence, while not to be condoned, is less blameworthy than purposeful misconduct or transgressions, and weighs less heavily in favor of banning reprosecution.

Hastings, 847 F.2d at 925.

In the present case, Shanahan was not responsible for the court's failure to retry him within seventy days. I see no evidence, however, of bad faith, gamesmanship, or intentional delay in the government's actions. Both Conry and Morse maintain extremely busy trial schedules and began working full-time on

complex trials almost immediately following Shanahan's original trial. This does not excuse the government's extended delay or the ensuing need for dismissal, but it weighs heavily in favor of a determination that the dismissal should be without prejudice.

   3.   Impact of reprosecution

"[W]henever the [Speedy Trial Act's] requirements are not met, the administration of justice is adversely affected. The [Act] nevertheless asks the courts to consider the degree to which the administration of justice is harmed." Scott, 270 F.3d at 58 (internal quotations omitted).

Here, retrial would probably take approximately two weeks, and there are no indications that reprosecution would in some other way have a harmful effect on "the fair and efficient administration of justice." See Barnes, 159 F.3d at 17. "There is no question that a dismissal with prejudice would have a stronger deterrent effect than a dismissal without prejudice." Scott, 270 F.3d at 58. However, the fact that there is a dismissal at all serves a strong deterrent effect, where, in order to proceed, the prosecution must return to the grand jury to seek a new indictment within the next six months. See 18 U.S.C. § 3288.

>    4.   Length of delay and actual prejudice
>
>    These elements are virtually self-explanatory.  The
>    greater the prejudice to a particular defendant in
>    consequence of a particular delay, the greater the
>    justification for barring reprosecution.  The length of
>    the delay can be seen as a closely aligned factor:
>    stretching delay to greater and greater extents tends
>    ineluctably to provoke prejudice.  Witnesses move or
>    perish, memories grow dim, defense costs escalate, and
>    the bottomless resources of the prosecution can be
>    brought ever-increasingly to bear.

Hastings,  847 F.2d at 929.

Shanahan does not present a credible argument that the delay in scheduling his retrial has adversely affected his ability to present a defense.  Furthermore, while he has powerfully explained how the pendency of serious criminal charges has affected him and his family psychologically and financially, the effects he describes are no different from those that are experienced by every defendant who must await the disposition of serious criminal charges.  Shanahan is not in custody, and I allowed him to return to Ireland to be with his family while he awaits retrial.  I cannot say that the passage of 104 days of non-excludable time between the declaration of the mistrial and the filing of his motion to dismiss caused him sufficient prejudice to warrant an order dismissing the charges against him

with prejudice.

### III. <u>CONCLUSION</u>

For the reasons stated herein, I grant the defendant's motion to dismiss without prejudice (Doc. No. 348).

SO ORDERED.

<pre>
                              /s/PaulBarbadoro
                              Paul Barbadoro
                              United States District Judge
</pre>

August 15, 2007

cc: Counsel of Record